Froessel,
J. Petitioner, who is presently 29 years old, applied for a license as an insurance broker, under section 119 of the Insurance Law, on November 14, 1955. This application contained all the requested information, including a certificate of character signed by three persons and a statement by his employer, an insurance broker. In answer to one of the questions on the application, petitioner stated that he had been convicted of a crime in 1951. Attached to his application was a statement by him that he was “ a conscientious objector to war and military service on philosophical and religious grounds that he “ applied to the local draft board for a conscientious objector’s classification. Such a classification would have lawfully deferred me from military service, but instead would have subjected me to some form of compulsory civilian activity not in any way connected with a war effort ”; that his request for classification as such had been denied on the basis of recommendations premised upon investigations whose results were not made available to him. Petitioner further stated that he reported to the armed forces induction center, but “as a conscientious objector, [he] refused to complete the induction procedure ”, and he was charged with and convicted of a violation of the Selective Service Act of 1948 (U. S. Code tit. 50, Appendix, § 462). The statement concluded that since the date of petitioner’s conviction in 1951, “ there has been some clarification of the issues involved, and had my ease come to a head at this time, no prosecution or conviction would have ensued ”.
It may be noted that petitioner was tried while the Korean War was pending, and that the maximum sentence of five years’ imprisonment was at first imposed, on condition that an application for reduction of sentence would be entertained if petitioner would consent to induction. Upon the Trial Judge’s discovery of the fact that petitioner would not be acceptable to *643 the armed forces even if he volunteered, he reduced petitioner’s sentence to three years’ imprisonment.
In December, 1955 petitioner took the examination for an insurance broker’s license, and was notified that he passed. Apparently on February 29, 1956 he was “ interviewed ” by a representative of the Insurance Department concerning his conviction. On March 7,1956 the Superintendent of Insurance, through a deputy superintendent, denied petitioner’s application on the ground that ‘1 it has been concluded as a result of the information furnished in connection with your affirmative answer to the question asking whether you have ever been arrested, indicted for or convicted of any crime, that you may not be regarded as a competent and trustworthy person, within the contemplation of the Insurance Law, to be licensed as an insurance broker.”
Petitioner, in a letter by his attorney dated March 15, 1956, requested that he be granted a hearing so that he might show why denial of his application was erroneous. On April 12,1956 an “informal hearing” was arranged to be held before the principal insurance examiner attached to the Complaints Bureau. No stenographic record was taken of the hearing, the record here comprising an affidavit by the examiner based on notes he took at the time and statements by petitioner’s attorney based upon his recollection of the hearing. These are not without conflict as to what transpired.
Petitioner states that he requested the Insurance Department to “go behind the conviction to see why petitioner refused to accept Military Service”; he contended that “a person who stands on [his] conscience is a trustworthy person ”, and that a license had been granted to one Kassin whose situation was similar to petitioner’s. The examiner replied, as admitted in respondent’s answer, that the Insurance Department “ would not go behind the conviction ”, and that the policy of the department had changed since the granting of the license to Kassin.
In the course of the hearing, the examiner asked petitioner (1) “ to what religious denomination he belongs (2) “ whether he had ever attended any religious services Petitioner answered both in the negative. It is further alleged in the petition that the examiner stated to petitioner that a person who was not a church member should not be recognized as a conscientious objector; respondent denied that the examiner *644 made this statement. The examiner asserts that petitioner stated the basis of his refusal to be inducted was a religious objection to war which was common to all religions, and petitioner tells us in his reply that he “ spoke about his religion and belief in God and about the fact that the Selective Service Act does not provide for all conscientious objectors, and that did not make those not recognized not sincere ’ ’. The examiner agreed during the course of the hearing to allow petitioner to file a brief in support of his contentions.
This brief stated that petitioner was denied his claim of status as a conscientious objector by his Selective Service Board on the ground that the evidence in support of his contention was insufficient, though he submitted four statements that “ he was of excellent moral character averse to violence, or contention, and that was [sic—war] and military service would violate his innermost ethic ”. It was further stated that on petitioner’s appeal two witnesses testified as to the sincerity of petitioner’s beliefs; that the appeal to the appeal board was heard by an officer later objected to as prejudiced against conscientious objectors and not allowed to hear their appeals; and that petitioner never received a copy of the Federal Bureau of Investigation report or Justice Department recommendation, depriving him of an opportunity to answer statements therein. . The memorandum also alleged that petitioner “ could not avoid ” his conviction, because the courts are bound by the classification of the Selective Service Boards, even if they are erroneous;* that the conviction should not be final in determining his trustworthiness; that his probation officer would vouch for his trustworthiness ; and that he had lived a good, clean life for many years.
The examiner then, ‘‘ upon information contained in the files of the Department of Insurance, which included the application of Mr. Koster, the evidence adduced at the informal hearing and the brief filed by Mr. Koster’s attorney ”, determined that petitioner was not a trustworthy person under section 119 (subd. 2) of the Insurance Law, which determination, was communicated to petitioner’s attorney by a letter dated June 11, 1956. The latter then sought “ a personal reconsideration ” of *645 this matter by the Superintendent of Insurance himself, who replied on June 20, 1956 that he had personally examined the entire file and concluded that the denial of the application was proper and should be adhered to.
Petitioner urges that the hearing before the examiner was for the sole purpose of inducing the Insurance Department to “ go behind the conviction ”, and on this understanding no evidence was sought to be introduced as to the general good moral character of petitioner. Respondent, on the other hand, argues that petitioner had been offering evidence to ‘ ‘ minimize the effect of ’ ’ his conviction, that the hearing was a general one in which petitioner was to show that he was a trustworthy person, and that on the evidence adduced it was not an abuse of discretion to deny petitioner a license.
Special Term dismissed this article 78 proceeding after sustaining the Superintendent of Insurance, and the Appellate Division unanimously affirmed. In our opinion, these determinations cannot stand. Section 119 of the Insurance Law, as we read it in the light of its history and purpose, requires that the Superintendent of Insurance hold a formal hearing on the issue of petitioner’s trustworthiness and, since no such hearing was held, the matter must be remitted to the Superintendent for compliance with the statute.
Section 119 (subd. 12) provides, so far as pertinent here, that “ The action of the superintendent in * * * refusing to issue * * * an insurance broker’s license * * * ' shall be subject to judicial review”. Section 34 of the Insurance Law, prior to its amendment by chapter 932 of the Laws of 1956, stated: ‘ ‘ Whenever by the provisions of this chapter any order or other act of the superintendent is declared to be subject to judicial review at the suit of any person, such person may maintain a proceeding under article seventy-eight of the civil practice act.” Section 119, as supplemented by said section 34, replaced former section 143 (subd. 13) of the Insurance Law, which then provided: “ The action of the superintendent of insurance in * * * refusing to grant * * * a certificate of authority * * * shall be subject to review by order of certiorari.” (Emphasis supplied.)
In order that there could be a review by certiorari under former section 143, there would have had to be a hearing at which a record was made (see Matter of Newbrand v. City of *646 Yonkers, 285 N. Y. 164; Matter of New York Edison Co. v. Maltbie, 271 N. Y. 103; Matter of Standard Bitulithic Co., 212 N. Y. 179). And so, where a hearing is prescribed by law, expressly or impliedly, an administrative determination is reviewable by certiorari (1 Benjamin on Administrative Adjudication in New York 91; Third Annual Report of N. Y. Judicial Council [1937], p. 146). Review by certiorari in license cases has been stated to be integrally connected with the requirement of a hearing (22 Carmody-Wait on New York Practice, pp. 134-135, 155, 410, and n. 15), review in cases where there is no required hearing being generally mandamus (e.g., Matter of Small v. Moss, 277 N. Y. 501; Matter of Fink v. Cole, 1 N Y 2d 48; see Matter of Gimprich v. Board of Educ., 306 N. Y. 401, 405-406). The reason for this distinction is clear since in certiorari cases the petitioner is usually confined to the “record ” before the administrative body, while in mandamus the hearing in court presents petitioner with an opportunity to offer evidence in support of his contentions (see Third Annual Report of N. Y. Judicial Council [1937], supra, pp. 147-148).
In our opinion, the change in the Insurance Law which eliminated the specific reference to the “order of certiorari” in former section 143 (subd. 13), but continued the right of review, adding in said section 34 that such person may proceed “ under ” article 78 of the Civil Practice Act, merely reflected the abolition of the order of certiorari by section 1283 of the Civil Practice Act, enacted two years previously, and did not intend to change an applicant’s right to a hearing (see Matter of Guardian Life Ins. Co. v. Bohlinger, 308 N. Y. 174, 182-183). That this is so, and that the Legislature did not intend to restrict the rights of “ persons affected ” as they then existed, is made abundantly clear by the Report of the Joint Legislative Committee on Revision of Insurance Laws (N. Y. Legis. Doc., 1939, No. 101, p. 9).
Inasmuch as we are of the opinion that a hearing is required under present section 119 as it was under former section 143, we may note that, in determining whether petitioner is a trustworthy person under section 119, there are two distinct grounds upon which, petitioner may have been denied classification as a conscientious objector: (1) the Selective Service Board may have determined that petitioner was insincere in his averred *647 beliefs, or (2) it may have felt that petitioner’s beliefs, though sincerely held, did not fall within the definition of conscientious objectors stated in the Appendix to title 50 of the United States Code (§ 456, subd. [j]). Class (2) may embrace persons Avhose beliefs are founded upon “ essentially political, sociological, or philosophical views or a merely personal moral code ” (U. S. Code, tit. 50, Appendix, § 456, subd. [j]). Since deferment is an act of legislative grace, no one has a constitutional right to exemption, and sincerity is immaterial in these cases (see United States v. Bendik, 220 F. 2d 249; Berman v. United States, 156 F. 2d 377, cert. denied 329 U. S. 795; United States v. Kauten, 133 F. 2d 703; cf. United States ex rel. Phillips v. Downer, 135 F. 2d 521, where, under the earlier Selective Service Act of 1940, which did not differentiate between these two groups, the Second Circuit held that a person whose opposition to war was based upon “ philosophical and humanitarian ” grounds should be classified as a conscientious objector).
Clearly, both groups do not stand in the same position with regard to trustworthiness, for in one case a belief has been espoused to avoid military service, while in the other a sincere and deeply held conviction may have been the cause of failure to comply with the law. Were we to support the assertion of the examiner that the Superintendent did not have to go behind this particular kind of conviction, we too would be failing to distinguish between these groups. Furthermore, we would be approving a construction of the term “ untrustworthy ” which in no way accords with the meaning of that word and which denies an applicant an insurance broker’s license solely because he has adhered to his sincere personal beliefs.
To reach such a conclusion would read into the Insurance Law a qualification for holding a broker’s license that is in no sense conclusive as to the untrustworthiness or incompetency of the individual applicant or as to the professional standards of brokers, and thus would be violative of due process; in applying permissible standards, there must be a rational basis for the Superintendent’s findings (Schware v. Board of Bar Examiners, 353 U. S. 232, 238-239, citing “ Cf. In re Summers, 325 U. S. 561, 562, 564-569 ”, which latter case turned upon the taking of an oath). It is true that the statute with which we are here dealing is one phrased broadly so as to give the Superintendent of Insurance wide discretion in licensing insur *648 anee brokers, and of course the fact that petitioner was convicted of a crime is relevant in determining whether he is trustworthy. But this is not a statute which makes conviction of a crime ip.so facto a ground for the denial of an application (cf. Barsky v. Board of Regents, 305 N. Y. 89, affd. 347 U. S. 442; Hawker v. New York, 170 U. S. 189, and Linehan v. Waterfront Comm. of N. Y. Harbor, 116 F. Supp. 683, affd. 347 U. S. 439). This statute empowers the Superintendent to find conduct which did not result in an applicant’s conviction of a crime sufficient to render him untrustworthy, but it does not allow the conviction for any or every crime to be alone sufficient ground for a finding of untrustworthiness. Had this latter been the intent of the statute, it could have been expressly stated (see Matter of Nalore v. Baker, 244 App. Div. 554, 557), as, e.g., the Legislature did in the Education Law (§ 6514, subd. 2) (Barsky v. Board of Regents, supra).
If it is determined upon evidence that the Selective Service Board believed petitioner to be a sincere person, but one whose beliefs did not entitle him to conscientious objector status under the congressional act, then denial of his application for a license where this is the only evidence of his untrustworthiness would be arbitrary and capricious. On the other hand, if it is found that said board believed him to be insincere, then denial of petitioner’s application is within the discretion of the Superintendent.
With regard to petitioner’s contention that his conviction was obtained in violation of due process because he did not have copies of the Federal Bureau of Investigation and Department of Justice reports, this collateral attack on petitioner’s conviction belongs in the Federal courts. As petitioner points out in his brief—and as previously stated — the attention of the Insurance Department is not directed to the conviction itself, but to the underlying conduct which formed the basis of the conviction. Even if the conviction were voided, his conduct would still be relevant in a determination of petitioner’s trustworthiness.
Petitioner’s additional contention that the denial of his application was a denial of equal protection of the laws, since a license had been previously granted to a person in a similar situation, is not well taken. There was no discrimination among persons in a similar situation at any given period.
*649 The orders of the Appellate Division and Special Term should be reversed, and the matter remitted to the Superintendent of Insurance for further proceedings not inconsistent with this opinion.
Chief Judge Conway and Judges Desmond, Dye, Fuld, Van Voorhis and Burke concur.
Orders reversed, etc.

 It may be noted that the scope of judicial review of Selective Service Board classifications was broadened by the Supreme Court in Dickinson v. United States (346 U. S. 389), decided after petitioner’s case had been tried.