MUHAMMAD ALI, Plaintiff,

v.

The DIVISION OF STATE ATHLETIC COMMISSION OF the DEPARTMENT OF STATE OF the STATE OF NEW YORK and Edwin B. Dooley, Albert Berkowitz and Raymond J. Lee, as Chairman and Members Thereof, Defendants.

No. 69 Civ. 4867.

United States District Court, S. D. New York.

Sept. 14, 1970.

Michael Meltsner, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., New York City, for defendants; Charles A. LaTorella, Jr., Asst. Atty. Gen., of counsel.

MANSFIELD, District Judge.

In this action for a declaratory judgment and injunction, plaintiff, Muhammad Ali, popularly known as Cassius Clay, has moved for a preliminary injunction restraining defendants from denying him a license to box in the State of New York. For the reasons stated below the motion is granted.

The essential facts are not in dispute. From 1961 until April, 1967, Ali was licensed to box in New York, where he was recognized as the World Heavyweight Champion. On April 28, 1967, the New York State Athletic Commission ("Commission" herein) suspended his license because of his refusal to submit to induction in the Armed Forces of the United States. On September 30 of the same year, Ali's license automatically expired pursuant to N.Y.Unconsolidated Laws § 8910, which provides that all such licenses are for one year's dura-tion and automatically expire on that date.

On June 20, 1967, Ali, after a jury trial, was convicted in the United States District Court for the Southern District of Texas of the federal felony of refusing to submit to induction into the Armed Forces, 50 U.S.C. App. § 462(a), and was sentenced to a term of five years imprisonment. The sentencing judge indicated that he might be disposed to consider a reduction of the sentence if the conviction should be affirmed. The conviction was affirmed by the Fifth Circuit Court of Appeals, Clay v. United States, 397 F.2d 901 (5th Cir. 1968), but the Supreme Court remanded the case to the district court on March 24, 1969, to determine whether the conviction was tainted by evidence obtained through unlawful electronic surveillance. The district court, after holding hearings, decided that the conviction did not rest upon such evidence, and its determination was recently affirmed by the Fifth Circuit, United States v. Clay, 430 F.2d 165 (5th Cir. July 6, 1970). Ali is now in the process of petitioning the Supreme Court for certiorari.

During all of these proceedings in his criminal case, Ali has been at liberty upon a $5,000 bond. On September 22, 1969, he applied to the Commission for renewal of his license to box in New York. On October 14, 1969, the Commission unanimously denied his application because his "refusal to enter the service and [his] felony conviction in violation of Federal law is regarded by this Commission to be detrimental to the best interests of boxing, or to the public interest, convenience or necessity." In a letter to Ali dated October 16, 1969, defendant Dooley, Chairman of the Commission, reviewed the criminal proceedings, noted that Ali had no other criminal record, notified him of the Commission's denial of his application, and advised him that if the conviction should be reversed and he should reapply for a license, the Commission would "be more than pleased to reconsider this determination."

Approximately four months after the Texas district court's reaffirmation of Ali's conviction the present action was begun. Invoking our jurisdiction under 28 U.S.C. §§ 1343(3) and 1332(a), the complaint as originally drawn charged that the defendants' action in denying Ali a license because of his conviction for refusing to serve in the Armed Services violated his First and Fourteenth Amendment rights and constituted cruel and unusual punishment in violation of the Eighth Amendment, thus giving rise to a claim of 42 U.S.C. § 1983. Ali's Due Process claim was based on his general charge that defendants' action was arbitrary and capricious, his contention being that a conviction for draft evasion had no rational relationship to the regulated activity of boxing and was therefore irrelevant to defendants' proper exercise of their functions. Ali charged additionally, but apparently as makeweights, that defendants' action impeded his freedom of religion and constituted cruel and unusual "punishment."

In a characteristically thorough and well-considered opinion Judge Frankel dismissed Ali's complaint as thus originally drawn, pointing out that the defendants' right to deny a boxing license because of an applicant's prior felony conviction was established beyond doubt and that the claims based on freedom of religion and cruel and unusual punishment were baseless. Ali v. Division of State Athletic Commission et al., 308 F.Supp. 11 (S.D.N.Y.1969). Noting, however, that Ali broadly claimed arbitrary discrimination in violation of his rights under the Equal Protection clause without asserting any essential supporting facts, Judge Frankel granted leave "to replead the broad allegation so that plaintiff may attempt, if he responsibly deems it possible, to supply some concrete and specific content for his charge," id. p. 15 n. 3.

On January 27, 1969, pursuant to the leave thus granted, plaintiff amended his complaint to make the following charge:

"E. Defendants have arbitrarily, capriciously and invidiously refused to renew plaintiff's professional boxer's license in violation of plaintiff's right to equal protection of the laws guaranteed by the Fourteenth Amendment. Although defendants have denied plaintiff a boxer's license on the basis of his refusal to submit to induction and consequent conviction, defendants have on other occasions licensed professional boxers who had been convicted of crimes involving moral turpitude, to wit: (1) Jeff Merritt, who currently holds a New York State boxer's license, has been convicted of robbery; (2) Joey Giardello, who was granted a New York State boxer's license on August 4, 1965, had been convicted of assault; (3) Rocco Barbella, also known as Rocky Graziano, who was licensed to box in New York State from approximately 1942 to 1947, and from May, 1949, to an unknown date, had been twice convicted of petty larceny and in addition was court martialed while serving in the United States Army and convicted of being absent without leave and of disobeying orders and sentenced to one year at hard labor and a dishonorable discharge. In addition, on October 3, 1962, defendants recognized Sonny Liston, who had been convicted of armed robbery and of assault with intent to kill, as heavyweight boxing champion in the State of New York. On information and belief, defendants have in their possession records of all professional boxers licensed in New York State which reveal other instances in which individuals convicted of a crime of moral turpitude have nonetheless been licensed to box in the State of New York."

On August 18, 1970, Judge Frankel denied defendants' motion to dismiss the complaint as thus amended.

Forced as we are to assume jurisdiction over this federalized dispute, Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969); Houghton v. Shafer, 392 U.S.

639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), even though we would prefer that Ali invoke New York state court procedures (e. g., an Article 78 proceeding) rather than risk exacerbation of our relations with the state and its agency, the Athletic Commission,. we must now decide whether plaintiff has adduced sufficient evidence to demonstrate a strong likelihood that the Commission's action violated his equal protection rights and that he will suffer irreparable injury unless preliminary relief is granted. Checker Motors Corp. v. Chrysler Corp., 283 F.Supp. 876 (S.D. N.Y.1968), aff'd, 405 F.2d 319 (2d Cir. 1969).

Following the filing of the amended complaint, Ali's counsel, exercising his rights of pretrial discovery, investigated the Commission's current files for the purpose of determining whether it had licensed other boxers who had been convicted of crimes or military offenses. The fruits of this investigation are rather astounding. The Commission's records reveal at least 244 instances in recent years where it has granted, renewed or reinstated boxing licenses to applicants who have been convicted of one or more felonies, misdemeanors or military offenses involving moral turpitude. Some 94 felons thus licensed include persons convicted for such anti-social activities as second degree murder, burglary, armed robbery, extortion, grand larceny, rape, sodomy, aggravated assault and battery, embezzlement, arson and receiving stolen property. The misdemeanor convictions, 135 in number, were for such offenses as petty larceny, possession of narcotics, attempted rape, assault and battery, fraud, impairing the morals of a minor, possession of burglar's tools, possession of dangerous weapons, carrying concealed weapons, automobile theft and promotion of gambling. The 15 military offenses include convictions or dishonorable discharges for desertion from the Armed Forces of the United States, assault upon an officer, burglary and larceny. On the basis principally of these undisputed records,

plaintiff now seeks preliminary injunctive relief.

■ The question now before us, unlike that before Judge Frankel, is not whether the Commission may in its discretion deny a boxing license to an applicant because of his conviction of a felony or military offense. We concur in Judge Frankel's recognition of such power in the Commission. Boxing as a sport poses such serious risks of death or physical harm, brutality, corruption or "fixes," and fraud that the State of New York, in the exercise of its police power, could (and for a time did) lawfully abolish public boxing exhibitions, or it could subject professional boxing and those connected with it to thorough regulation, which it has done. By statute it created the Commission, Unconsolidated Laws § 8901, and placed boxing under its "sole discretion, management, control and jurisdiction," Unconsolidated Laws § 8906. All those connected with professional boxing exhibitions, including ticket takers, doormen, ushers, managers, announcers, and special policemen as well as boxers themselves, are required to obtain licenses from the Commission, Unconsolidated Laws § 8907. Sham and collusive exhibitions are a basis for revocation of the licenses of all those involved, Unconsolidated Laws § 8915, and the Commission is empowered to seek heavy civil penalties against those who violate the boxing law or the rules and orders of the Commission, Unconsolidated Laws § 8916.

The legislature has authorized the Commission to grant licenses to engage in public boxing exhibitions only if the "character and general fitness" of an applicant are such that his participation in boxing "will be consistent with the public interest, convenience or necessity and that the best interests of boxing * * * generally and in conformity with the purposes of this act," Unconsolidated Laws § 8912. In addition it is specifically provided that the Commission may "refuse to renew or issue a license, if it shall find that the applicant * * * has been convicted of a crime

in any jurisdiction," Unconsolidated Laws § 8917.

The state's power to deny a license because of the applicant's prior conviction has usually been upheld on the ground that the conviction relates directly to the standards of character and conduct properly demanded of a person engaged in certain activities affecting the public, such as the practice of law, N.Y. Judiciary Law, McKinney's Consol.Laws, c. 30, § 90, medicine, Barsky v. Board of Regents, etc., 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829 (1954), or voting, Green v. Board of Elections, 380 F.2d 445 (2d Cir. 1967). Although conviction of a crime involving moral turpitude should have little or no effect upon a boxer's athletic skill or physical prowess in the ring, it could bear upon his proclivity to corruption or upon the general reputation of professional boxing as a sport. For these reasons the action of a state or its agency in barring convicted persons from certain types of employment affecting the public has been upheld as constitutional. DeVeau v. Braisted, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (service as officer of longshoremen's union).

■ Although the state possesses broad powers to regulate boxing, however, it may not exercise those powers in such a way as to deny to an applicant the equal protection of the state's laws, which is guaranteed to him by the Fourteenth Amendment. A deliberate and arbitrary discrimination or inequality in the exercise of regulatory power, not based upon differences that are reasonably related to the lawful purposes of such regulation, violates the Fourteenth Amendment. McLaughlin v. Florida, 379 U.S. 184, 190, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Cohen v. Hurley, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); Schware v. Board of Bar Examiners, 353 U.S. 232, 238–239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Norris v. Alabama,

294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78 (1907); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886); Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947). In determining whether there has been such an arbitrary denial of equal protection, the acts of the state's duly constituted Athletic Commission or similar agency are deemed to be those of the state itself. United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); Griffin v. Maryland, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). In short, the exercise of state power by a state agency in the issuance or refusal of licenses to engage in a regulated activity should not represent the exercise of mere personal whim, caprice or prejudice on the part of such agency. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947); State ex rel. O'Neil v. Town of Hallie, 19 Wis.2d 558, 120 N.W.2d 641 (1963). It should, and constitutionally must, have some rational basis.

■ If the Commission in the present case had denied licenses to all applicants convicted of crimes or military offenses, plaintiff would have no valid basis for demanding that a license be issued to him. But the action of the Commission in denying him a license because of his refusal to serve in the Armed Forces while granting licenses to hundreds of other applicants convicted of other crimes and military offenses involving moral turpitude appears on its face to be an intentional, arbitrary and unreasonable discrimination against plaintiff, not the even-handed administration of the law which the Fourteenth Amendment requires. Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). It is not suggested that any rational basis exists for singling out the offense of draft evasion for labelling as

"conduct detrimental to the interests of boxing" while holding that all other criminal activities such as murder, rape, arson, burglary, robbery and possession of narcotics are not so classified. All other things being equal, the convicted murderer, burglar, rapist, or robber would seem to present a greater risk of corruptibility as a licensed boxer, and a greater likelihood of bringing boxing into disrepute, than would the person who openly refused to serve in the Armed Forces. We find it even more difficult to detect any rational basis for distinguishing between a deserter from the Armed Forces, to whom a boxing license has been granted by the Commission, and a person who frankly refuses in the first place to serve.

Nor do we see any rational basis for denying Ali a license because his conviction is "recent" (June 20, 1967), and he has not yet served his sentence. The Commission's contention that the recentness of Ali's conviction provides an adequate basis for denying him a license is without merit. Although a distinction between recent and older convictions is reasonable in the abstract, the Commission's own records reveal that it has not made such a distinction in its disposition of other applications. The Commission's records reveal numerous instances where a license has been issued either in the same year as, or within a year or two after, the applicant's conviction of a serious crime.

The Commission further argues that in the case of applicants who have served their sentences the interests of society would best be served by permitting them to assume their normal places in society, notwithstanding the conviction. The Commission has viewed the license of such persons as part of the rehabilitative process "after they had paid their debt to society." On the other hand, argues the Commission, since plaintiff's conviction is current and "has not yet spent its full force," and since he must "yet serve a substantial prison sentence," it has refused him a license.

First of all, this tenuous distinction apparently overlooks the line of reasoning by which prior convictions are normally deemed relevant to licensing decisions. The assumption is that the convicted person might fail to meet standards of conduct considered appropriate in the licensed activity, whether or not his sentence has "spent its full force." DeVeau v. Braisted, 363 U.S. 144, 80 S. Ct. 1146, 4 L.Ed.2d 1109 (1960); Green v. Board of Elections, 380 F.2d 445 (2d Cir. 1967). The distinction now urged between individuals who have served their sentences and those who have not is nowhere set forth in the relevant statutory provision, Unconsolidated Laws § 8917, or in any ruling, regulation, or order of the Commission prior to the plaintiff's application for a license to box. The records of the Commission show that 28 individuals have been licensed to box while on probation, and 26 while serving their sentences on parole. It is settled beyond dispute that a prisoner released on parole, although outside prison walls, continues to be in the legal custody of the warden of the prison from which he is released and is subject to being retaken and returned to actual custody until the expiration of the term of his sentence. N.Y. Correction Law, McKinney's Consol.Laws, c. 43, § 213; People v. Santos, 31 A.D.2d 508, 298 N. Y.S.2d 526 (1st Dep't 1969); People ex rel. Natoli v. Lewis, 287 N.Y. 478, 41 N.E.2d 62 (1942). The 26 parolees who were awarded licenses by the Commission, like the plaintiff in this case, had sentences still to serve, some for as long as nine years. Moreover, plaintiff has furnished from the Commission's files 19 recent instances where the Commission has licensed a boxer or renewed his license when it knew that a serious criminal charge was pending against him or where it took no action to suspend a boxer's license upon learning of his arrest or even of his conviction of a crime.

In addition to the fact that the Commission's own records negate the exist-

ence of any classification based on the recentness of conviction or on the pendency of sentence, such a differentiation would only have the undesirable effect of discouraging a convicted applicant from exercising his right to pursue his appeal. If plaintiff, for instance, instead of prosecuting his appeal, had commenced service of his sentence on June 20, 1967, the date when he was convicted and sentenced, it is reasonably certain that by this time (more than three years later) he would have been released on parole and be eligible for a license according to the Commission's own demonstrated and admitted standards. Having in mind that with each passing year his ability to earn a living from boxing declines, the Commission's policy unduly penalizes plaintiff for exercising his lawful right of appeal. Cf. Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

We are equally unable to accept the Commission's asserted solicitude for the "rehabilitative" process as a reason for deferring the issuance of a license until plaintiff has served his sentence. Such action proceeds on the theory that rehabilitation cannot commence until after confinement, whereas most penologists take the view that rehabilitation should be commenced at the earliest possible moment.[1]

■ The suggestion that it is useless to issue a license because plaintiff's use of the license may soon be terminated by a long term of confinement, during which he will be unable to engage in public boxing exhibitions, poses a matter that has not apparently been of any concern to the Commission in the issuance of licenses to others. Its records reveal at least 16 cases in which it has issued a license that would expire automatically within less than 30 days pursuant to N. Y. Unconsolidated Laws § 8910. Furthermore, the argument ignores the possibilities that the plaintiff's conviction may yet be reversed or, if affirmed, that his sentence may be reduced.

Defendants have offered no evidence tending to refute or rebut the overwhelming and undisputed proof of arbitrary capricious, and unfounded discrimination furnished by plaintiff. Although ample opportunity has been afforded to the Commission, we have not received evidence of any instances where licenses have been denied by the Commission because of an applicant's conviction or his criminal activities in answer to the hundreds of instances to the contrary, nor does it appear that the denial of plaintiff's license application presages any general movement away from the pattern of permissiveness which has hitherto characterized the Commission's exercise of its licensing powers. Defendants have not suggested, for instance, that Ali's application was denied pursuant to a newly adopted policy of general application that would require similar disposition of all other applica-

---

1. Without suggesting that the crime of refusing induction is less serious than other crimes which the Commission has deemed inadequate to require disqualification of applicants for boxing licenses, we cannot help noting that draft offenders do not usually pose rehabilitation problems of the same magnitude. Cf. Army Regulation No. 601-270 ¶¶ 3-9, 3-39(2) (March 18, 1969); Hallinan v. Committee of Bar Examiners, 65 Cal.2d 447, 55 Cal. Rptr. 228, 421 P.2d 76 (1966); Koster v. Holz, 3 N.Y.2d 639, 171 N.Y.S.2d 65, 148 N.E.2d 287 (1958). The draft offender is frequently a person with no other criminal record who refuses to serve simply because he believes that our country's participation in the Vietnam War is basically wrong and immoral. Unlike the convicted murderer, burglar, rapist, or robber, he is most unlikely, if released upon probation, to pose any threat of harm to the public. This has led to a wide disparity in views as to the appropriate sentence in draft evasion cases, with most courts imposing some prison sentence as a deterrent to wholesale draft evasion and others suspending the imposition of sentence and placing the convicted evader on probation.

tions by those convicted of crimes. On the contrary, two license applications granted by the Commission during the relatively short period between its denial of Ali's application on October 14, 1969, and his examination of the Commission's records during February and May, 1970, strongly suggest that the general standard by which the Commission evaluates such applications was abandoned only in Ali's case. In 1970 the Commission granted a boxing license to a parolee who had been convicted of three felonies, attempted robbery in the second degree in 1960, attempted robbery in the third degree in 1955, and robbery in the third degree in 1953. Also in 1970, the Commission granted a license to an individual convicted of simple assault on a police officer, a misdemeanor, in 1969. A number of licenses were granted to convicted felons and misdemeanants in 1969, but it does not appear whether the Commission so acted before or after the denial of Ali's application. In any event, 35 licenses were granted to felons and misdemeanants in 1968 and 1969, subsequent to the suspension of plaintiff's license by the Commission in 1967, which was similarly based on his refusing induction.

Upon the record before us, therefore, plaintiff demonstrates a strong likelihood of success on the merits and the evidence compels us to find that the Commission's action in denying him a boxing license because of his conviction and refusal to serve in the Armed Forces constituted an arbitrary and unreasonable departure from the Commission's established practice of granting licenses to applicants convicted of crimes or military offenses. Thus the Commission has denied Ali his right under the Fourteenth Amendment to equal protection of the laws of the State of New York.

Denial of a license to box has barred Ali from pursuing in New York his chosen trade, from which he earned his living for most of his adult years prior to 1967, with but a limited number of years remaining in which he can meet

the rigorous physical standards essential to engaging in such activity. It is clear that unless preliminary relief is granted, he will suffer irreparable injury. The harm to Ali cannot be measured in damages. Accordingly his motion is granted and the defendants are enjoined from denying him a license to box because of his conviction for refusal to serve in the Armed Forces of the United States.

The foregoing shall constitute the court's findings of fact and conclusions of law in accordance with Rule 52(a), F.R.C.P.

Settle order in accordance with Rule 65, F.R.C.P.