590 F.Supp. 778 (1984)
SAFEWAY STORES, INCORPORATED, Plaintiff,
v.
BOARD OF AGRICULTURE OF the STATE OF HAWAII, Hawaii Department of Agriculture, Division of Milk Control, Jack K. Suwa, as Chairman of the Board of Agriculture, Alex Napier, Jr., Richard Caldito, David Oshiro, Shoichi Nagamine, Sidney Good, Federick Galdones, Susumu Ono and Noel Kefford, individually and as members of the Board of Agriculture of the State of Hawaii, Robert T. Yara, individually and as Assistant Milk Commissioner, 50th State Dairy Farmers' Cooperative, George Freitas Dairy, Inc., Clifford Freitas, Maunawili Dairy, Ltd., Antonio Salcedo, Steven Olbrich and Janice Olbrich, co-partners doing business under the trade name and style of Huanui Dairy, a Hawaii general partnership, Louis G. Costa, dba Louis Costa Dairy, Bruce Costa, dba Five Star Dairy, Wayne Salcedo, dba Kaimi Farm; Ernest Souza, dba Lucky S. Dairy, Wayne Costa, dba Wayne's Dairy, Oahu Dairy Cooperative, Ferreira Dairy, Inc., Gertrude K. Toledo, Special Administratrix of the Estate of Robert V. Toledo, deceased, dba Toledo Twin Pine Dairy, John S. Toledo, dba Keoua Dairy, Carl Meier, dba Carl Meier Dairy, Mountain View Dairy Inc., David Wong, Jr., Richard Brazil, Fresh Milk Industry of Hawaii and James H. Koshi, Defendants.
Civ. No. 84-0166.
United States District Court, D. Hawaii.
July 3, 1984.
*779 Cooper, Kirkham & McKinney, P.C., Josef D. Cooper, Kirk A. McKinney, Martin J. O'Leary, San Francisco, Cal., Wendell H. Marumoto, Honolulu, Hawaii, for plaintiff.
John Peter Uehara, Gerald Y.Y. Chang, Coral Wong Pietsch, Deputy Atty. Gen., Honolulu, Hawaii, for state defendants.
Walter G. Chuck, Steven K.S. Chung, Honolulu, Hawaii, for Gertrude K. Toledo, Special Administratrix of the Estate of Robert Toledo.
Paul Devens, Ann Kurihara, Honolulu, Hawaii, for 50th State Dairy Farmers' Co-op., George Freitas Dairy, Inc., Clifford Freitas, Maunawili Dairy, Ltd., Antonio Salcedo, Steven Olbrich and Janice Olbrich, co-partners doing business under the trade name and style of Huanui Dairy, Louis G. Costa, dba Louis Costa Dairy, Bruce Costa, dba Five Star Dairy, Wayne Salcedo, dba *780 Kaimi Farm, Ernest Souza, dba Lucky S. Dairy, Wayne Costa, dba Wayne's Dairy, Oahu Dairy Co-op., Ferreira Dairy, Inc., John S. Toledo, dba Keoua Dairy, Carl Meier, dba Carl Meier Dairy, Mountain View Dairy Inc., David Wong, Jr., Richard Brazil, Fresh Milk Industry of Hawaii and James H. Koshi.

OPINION AND ORDER
PENCE, District Judge.

FACTS
Plaintiff Safeway Stores, Inc., owns and operates retail grocery stores throughout the country. Safeway also operates a number of plants in the mainland United States for processing and packaging dairy products, including fresh milk, cottage cheese and yogurt. Safeway routinely processes raw milk into fresh milk products, and then transports those products across state lines to its retail grocery stores.
Safeway has operated retail grocery stores in Honolulu, Hawaii, for over twenty years. Safeway has been able to sell some of its own dairy products, including yogurt, butter, cottage cheese, sour cream, and ice cream, in its Honolulu stores. Due to the Hawaii Milk Control Act, Hawaii Rev.Stat. § 157-1 et seq. (1976 & Supp.1983), however, Safeway has been prohibited from selling its fresh fluid milk products in Hawaii and has been able to obtain milk supplies only from the two Honolulu processors, Foremost and Meadow Gold.
Safeway now wants to sell at its Honolulu stores its own fresh milk products which it processes in California. In order for it to do so, state law requires that it obtain a Hawaii milk distributor's license. Section 157-21 of the Hawaii Milk Control Act prohibits distribution of fresh milk products in Honolulu without a milk distributor's license, and distribution without a license is punishable by fine or by imprisonment.
The Hawaii Milk Control Act gives power over milk distributors' licensing to the Board of Agriculture. The Act also requires that the Board of Agriculture must make affirmative findings in order to deny a license. Section 157-24(a) of the Act provides that no license shall be denied unless the Board finds that the applicant is not qualified to conduct the business properly, that the issuance of the license will tend to promote destructive or demoralizing competition in a market already adequately served, or that the issuance of the license is otherwise not in the public interest.
On December 17, 1982, Safeway filed an application with the Board of Agriculture for a license to distribute its fresh milk products in its Hawaii stores. The license application indicated that the milk would be transported to Hawaii in refrigerated containers aboard ocean-going cargo ships from Safeway's processing facility in San Leandro, California.
At the same time, Safeway also applied to the Hawaii Department of Health, Environmental Protection and Health Services Division, Sanitation Branch, for a milk distributor's permit. Chapter 3 of the Department of Health's Public Health Regulations requires that a health department permit be obtained in addition to a license from the Board of Agriculture. The Department of Health issued Safeway's permit on February 8, 1983. The basis for the health department's permit was an inspection of Safeway's San Leandro plant and its raw milk supplies conducted by the Interstate Milk Shippers. The Interstate Milk Shippers operates in conjunction with the United States Public Health Service, the United States Food and Drug Administration, and some state regulatory agencies.
On March 30, 1983, the Board of Agriculture approved a motion to "intend to deny" Safeway's application. Safeway was notified of the intent to deny on April 14, 1983. The reasons for the intent to deny were that granting the license would tend to promote destructive or demoralizing competition in a market already adequately served, and that granting the license would not be in the public interest.
Safeway timely requested a public hearing on the intent to deny. The hearing began on September 29, 1983, and lasted *781 for nine days, with testimony from seventeen witnesses. Members of the local dairy industry were allowed to intervene. On December 2, 1983, the hearing officer issued a Recommended Decision setting out his opinion that the Safeway license application should be granted. The Recommended Decision contained express findings that granting the license would not promote destructive or demoralizing competition in a market already adequately served, and that issuance of the license would be in the public interest.
On February 9, 1984, the full Board of Agriculture voted to reopen the Safeway hearing to consider evidence on two new issues: first, the effect of the new federal dairy legislation passed in 1983, and second, the effect that issuing a license to Safeway might have on others who wish to import mainland milk to Hawaii.
Safeway filed this action in federal court on February 23, 1984. Safeway named the state and various of its agencies as defendants, and requested a determination that Section 157-24(a) and Article XI, section 3 of the Hawaii State Constitution (the so-called "self-sufficiency provision"), violate the Commerce Clause of the United States Constitution as they were being applied to deny Safeway a license to import milk to Hawaii. Safeway also named some Hawaii milk producers as defendants, alleging antitrust violations. Finally, Safeway made a claim for deprivation of constitutional rights under 42 U.S.C. § 1983.
The parties came before the court on May 10, 1984, for hearing on defendants' Motion to Dismiss and plaintiff's Motion for Partial Summary Judgment (on the constitutionality issue only).

I. DEFENDANTS' MOTION TO DISMISS
The defendants ask this court to dismiss Safeway's action on the ground of justiciability. Defendants contend that because the Board of Agriculture has not yet finally ruled on Safeway's application for a milk distributor's license, Safeway's complaint is premature and presents no "case or controversy," as is required by Article III, section 2, of the United States Constitution. Therefore, defendants urge, this court has no subject matter jurisdiction over this case.[1]
Defendants rely heavily upon two recent cases from the Ninth Circuit. In Pacific Legal Foundation v. State Energy Resources Conservation and Development Comm'n, 659 F.2d 903 (9th Cir.1981), aff'd, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), California utilities challenged the validity of California's statutory scheme regulating nuclear power plants. The utilities argued that the energy commission created by the regulatory scheme lacked the power to collect information and to determine whether nuclear plants should be certified.
In deciding whether the issues presented in the suit could be decided, even though the challenged statute had not yet been applied, the Ninth Circuit applied the standard laid out in Abbott Laboratories, Inc. v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). There, the Supreme Court decided that if an issue is "purely legal," a challenge to an as yet unapplied statute may be heard; if further factual development is necessary to sharpen the issues, the challenge must be rejected as premature. The Ninth Circuit then rejected the utilities' suit on the ground that the issue was not "purely legal" and more facts were necessary. The court pointed out that the utilities had not even begun to invoke the certification process. They had not filed applications for certification, *782 so the court had no way of knowing what kind of information the newly-created commission might require. "We cannot tell whether the Energy Commission will ever deny certification, or whether such a denial might be based upon impermissible reasons." 659 F.2d at 916. The court held that the case was not yet ripe, and that adjudication was neither necessary nor desirable. Further, the Ninth Circuit noted, delay in adjudication would not cause the parties any hardship, because the utilities' proposed plants were nowhere near completion and certification was not immediately needed.
Pacific Legal Foundation does not require this court to dismiss Safeway's complaint for lack of ripeness. Safeway's situation is distinguishable on its facts. Safeway set the licensing process in motion in December of 1982 and has been actively involved in it ever since. There is, therefore, no credible argument that the Hawaii Milk Control Act is an untried statute and the adjudication should await actual use of the law. Application of the law, and the administrative process its application entails, has been going on for more than eighteen months.
Moreover, there is no uncertainty here as to what factors the Board intends to take into account in making its decisions. In its Intent to Deny of March 30, 1983, the Board announced its intention to rely on the "destructive competition" and "public interest" provisions of HAWAII REV. STAT. § 157-24(a) (1976). On February 9, 1984, it announced that it also wished to consider the effect of new federal legislation upon Safeway's supply and the effect of Safeway's license upon other applicants. The Board has thus expressly laid out the factors it intends to consider.
Finally, it is unclear how any further factual development could take place. The Board of Agriculture has already made the economic and competitive-effects analysis that is the subject of this litigation. The issue of whether consideration of the factors allowed by Section 157-24(a) is constitutional is fully presented now; this court can perceive no reason to wait for an indefinite time until the Board of Agriculture makes a final decision on the Safeway application. Indeed, if this court were to accept defendants' reasons for postponing adjudication, the Board could simply delay making any final decision on the application. State law imposes no time limit by when the Board must act. The state seems to argue that it may delay indefinitely under the guise of nonfinality. Here, unlike in the Pacific Legal Foundation situation, delay does cause hardship to Safeway, since Safeway is ready to import milk and cannot do so without a license. Pacific Legal Foundation is inapposite to this case.
The second case upon which defendants rely is Sea Ranch Ass'n v. California Coastal Zone Conservation Comm'n, 537 F.2d 1058 (9th Cir.1976). In Sea Ranch, landowners challenged the constitutionality of parts of the California Coastal Zone Conservation Act. Plaintiffs tried to assert that the Act should not apply to their property. The Ninth Circuit held that there was no case or controversy presented because there was no indication that the plaintiffs' rights had been subjected to a real and immediate threat. 537 F.2d at 1063. The court pointed out that plaintiffs had never begun the regulatory process by applying for the exemption they wanted, and a case or controversy is not presented "simply because a party is subject to a general regulatory process which, when applied to the specific facts developed in some future administrative proceeding, might cause a state agency to take a particular action which some court might thereafter determine to be unconstitutional." Id. (emphasis in original). Cf. Save South Kona Coalition v. Dole, 575 F.Supp. 277 (D.Hawaii 1983) (dismissal of case alleging hypothetical injury).
Sea Ranch, like Pacific Legal Foundation, is distinguishable from the case now before this court. In Sea Ranch, the plaintiffs had not even begun the administrative process they were challenging; in effect, they were trying to circumvent the administrative *783 process and obtain an immediate constitutional ruling. That is not the case here. Safeway has been going through the administrative process since December of 1982. It is not mere speculation that the Board of Agriculture might apply allegedly unconstitutional standards; it has already indicated that it will apply the criteria that Safeway is challenging.
This court finds that the appropriate precedent to look to here is Public Utilities Comm'n of California v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). In Public Utilities Comm'n, California had enacted, and the PUC clearly intended to enforce, a statute that would have prohibited California common carriers from giving special rates, other than those pre-approved by the PUC, for shipment of United States property. The United States brought a constitutional challenge without waiting for enforcement of the new Act.
The Supreme Court held that the challenge was proper and the issues were ripe for review. Where it is clear that the challenged statute will apply to the plaintiff, and where enforcement of the statute is merely a matter of time, exhaustion of the administrative process is unnecessary. The Court said that
[W]here the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right. Where the issue is a constitutional one which the administrative agency cannot be expected to entertain, then there is no need to go through the process; the administrative agency may have the power to administer a statute, but it does not have the power to declare unconstitutional the very statute that creates it.
355 U.S. at 540, 78 S.Ct. at 450-51. The situation in Public Utilities Comm'n parallels the facts in this case. Here, it is clear that the criteria of Section 157-24(a) apply to Safeway's application. It is equally clear that the Board of Agriculture intends to apply the criteria in its decision. Finally, the challenge brought by Safeway involves exactly the type of constitutional issue which the Board cannot be expected to entertain. The Board's function is to apply the criteria set out in Section 157-24(a), not to determine whether those criteria are constitutional. It would therefore be fruitless to await final determination, if indeed a final hearing were ever to come, before hearing the constitutional challenge.
This court holds that the constitutional issues in this case are ripe for adjudication, and that a "case or controversy," as required by Article III, section 2 of the United States Constitution, is presented. The case is justiciable even absent a final determination by the Board of Agriculture, and the defendants' Motion to Dismiss must therefore be denied.

II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
Safeway has moved this court for summary judgment on the first count of its complaint. Safeway requests a declaratory judgment that Section 157-24(a) and Article XI, section 3 of the Hawaii State Constitution cannot constitutionally be applied to deny Safeway a milk distributor's license.
HAWAII REV.STAT. § 157-24(a) (1976) provides that [n]o license shall be denied unless the board of agriculture finds...
(1) That the applicant is not qualified or does not possess equipment to conduct the business properly.
(2) That the issuance of the license will tend to promote destructive or demoralizing competition in a market already adequately served.
(3) That the issuance of the license is otherwise not in the public interest.
Article XI, section 3 of the Hawaii State Constitution provides, in relevant part, that "the State shall ... increase agricultural self-sufficiency.... The legislature shall provide standards and criteria to accomplish the foregoing."
The motion for partial summary judgment requires this court to determine *784 whether Section 157-24(a) and Article XI, section 3, as they have been applied to Safeway, violate the Commerce Clause of the United States Constitution. The Supreme Court has held that a two-step analysis must be employed to determine whether a state law may survive a Commerce Clause challenge. First, the court determines whether the state law has either the purpose or the effect of discriminating against goods that travel in interstate commerce. Minnesota v. Clover Leaf Creamery, 449 U.S. 456, 471 n. 15, 101 S.Ct. 715, 727 n. 15, 66 L.Ed.2d 659 (1981). If either discriminatory purpose or discriminatory effect is discovered, the court applies a "virtually per se rule of invalidity." Philadelphia v. New Jersey, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978). In other words, courts will invalidate both statutes that actually seek to promote local economic interests to the detriment of out-of-state products and statutes that have a legitimate state purpose but result in discrimination against interstate commerce. See, e.g., Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (state statute invalidated where showing of discriminatory purpose in passage of act was made); Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1977) (state statute prohibiting importation of hazardous waste invalid because, despite legitimate state health purpose, discrimination against interstate commerce resulted).
If there is no discrimination in purpose or effect, then a more flexible analysis is proper. The comparative burden on interstate commerce created by the statute should be weighed against the advantages accruing to the state. If the burden on interstate commerce outweighs the benefit to the state, the law is invalid; conversely, if a substantial benefit is attained at the expense of a slight burden on interstate commerce, the law will be upheld. Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).
This court's first task, then, is to examine the purpose of HAWAII REV. STAT. § 157-24(a). The legislative history reflects the fact that the Hawaii Milk Control Act was originally passed to protect Hawaii's dairy farmers from economic difficulties they were experiencing as a result of oversupply. See, e.g., George Freitas Dairy v. United States, 407 F.Supp. 1395, 1397 (D.C.D.Haw.1976), aff'd, 582 F.2d 500 (9th Cir.1978); Hawaii Senate Bill 761, Act 260, § 2 (June 7, 1967); Standing Committee Report No. 115 (April 1, 1967). In connection with the legislative history, it should also be noted that this court is free to disregard the legislature's statement of purpose if it considers the statement to be a pretext. Minnesota v. Clover Leaf Creamery, 449 U.S. 456, 476 n. 2, 101 S.Ct. 715, 730 n. 2, 66 L.Ed.2d 659 (1981) (Powell, J., concurring in part and dissenting in part). This court does find the statement in Senate Bill 761 that the Hawaii Milk Control Act was passed to serve "the interest of public health and welfare" to be disingenuous; the only real "health" concern was for the economic health of the dairy industry.
It is proper as well to look to the practical operation and enforcement of a law in order to divine its real purpose. Lewis v. BT Investment Managers, 447 U.S. 27, 37, 100 S.Ct. 2009, 2016, 64 L.Ed.2d 702 (1980). In the case of the Hawaii Milk Control Act, it is clear that the state's overriding concern is with preserving the well-being of Hawaii's dairies. For example, the Assistant Milk Commissioner, who was responsible for formulating the Division of Milk Control's position on Safeway's application, told the Board of Agriculture that granting Safeway a license would cause an oversupply of fresh milk which would lead to dumping by local processors, that importation by Safeway might make it harder for dairy farmers to get operating loans from banks, and that a loss of jobs from the dairy industry might result. The Assistant Milk Commissioner concluded that granting Safeway a license could lead to the demise of the dairy industry in Hawaii.
*785 This example is one of many in the record showing that the official concern is not for the wholesomeness and adequate supply of milk, but rather for the continued profitability of Hawaii's milk producers. And that, in turn, leads this court to the conclusion that a major purpose of the Hawaii Milk Control Act was the protection of the Hawaii milk industry.
Decisions of the United States Supreme Court require that such protectionist laws be invalidated. In H.P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949), the Supreme Court held that the application of New York's Milk Control Act was unconstitutional under the Commerce Clause. New York's Act provided that "[n]o license shall be granted ... unless the commissioner is satisfied that ... the issuance of the license will not tend to a destructive competition in a market already adequately served, and that the issuance of the license is in the public interest." In Hood, the New York State Commissioner of Agriculture denied a license application on the ground that granting the license would be economically detrimental to local milk producers. The Supreme Court said that applying the New York Milk Control Act in that way violated the Commerce Clause, because the clause prohibits using regulations for the protection of local economic interests. See also Polar Ice Cream & Creamery Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389 (1964) (invalidating Florida law giving Florida farmers most of market for fluid milk, the most profitable product on the market, and relegating out-of-state producers to less profitable products like cottage cheese and yogurt); Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935) (invalidating minimum-milk-price law despite legislature's claim of legitimate purpose of ensuring adequate milk supply for health of the community, on ground that economic welfare is always indirectly related to health, but such a relationship does not justify protectionist legislation).
Hawaii's Milk Control Act is strikingly similar to the New York law invalidated in Hood. Moreover, the way in which the Board of Agriculture is applying the law to Safeway is virtually identical to the way in which the New York officials applied their law to Hood. This court finds Hood to be persuasive precedent, and therefore holds that the Hawaii Milk Control Act, at least as applied to Safeway, is tainted by the invalid purpose of economic protectionism.
A finding of invalid purpose alone would be sufficient to hold the Board of Agriculture's application unconstitutional. For the sake of completeness, however, this court undertakes the next step in the analysis and looks to the effect of Section 157-24(a). Discriminatory effect may be found wherever a state regulation causes local goods to constitute a larger share, and out-of-state goods a smaller share, of the market. Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 126 n. 16, 98 S.Ct. 2207, 2214 n. 16, 57 L.Ed.2d 91 (1978). It is beyond cavil that such an effect results from Section 157-24(a) as it is being applied to exclude out-of-state milk and therefore to assure local dairy farmers of the whole Hawaii market. The application of the statute therefore clearly discriminates against products that travel in interstate commerce.
Moreover, the United States Supreme Court has determined that states may not discriminate against interstate commerce even if the reason for the discrimination is to cancel out some advantage that out-of-state goods have over local products. In Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court held that a North Carolina law which had the effect of raising the costs of Washington apple producers to make them commensurate with costs of North Carolina apple producers violated the Commerce Clause. The Court said that the Washington producers' "distinct market advantage" over North Carolina producers had to be left intact, even though it allowed the *786 Washington producers to command a premium. 432 U.S. at 352, 97 S.Ct. at 2446.
The same reasoning must be applied here. Any competitive advantage that mainland milk may have over Hawaii milk, whether it stems from federal support programs, greater consumer demand, or lower production costs, cannot constitutionally be neutralized by applying Section 157-24(a). The "leveling" rationale cannot save such a use of the statute.
In sum, then, this court holds that HAWAII REV.STAT. § 157-24(a) (1976), as applied to deny Safeway a license to import mainland milk, violates the Commerce Clause because of its discriminatory purpose and effect.[2] Nor can Article XI, section 3 of the Hawaii State Constitution be used to bar granting the license, for to do so would have an unconstitutional discriminatory effect of excluding out-of-state goods from Hawaii for no reason other than the fact that they travel in interstate commerce.
This court is not invalidating Section 157-24(a) on its face. While there is a good argument and sufficient precedent for doing so, considerations of comity suggest that a federal court should not paint with too broad a brush on the canvas of state agricultural regulation. There may be a way in which Section 157-24(a) can be constitutionally applied; this court will not deprive the Board of Agriculture of the chance to act on future applications to import mainland milk and to apply the statute in a manner consonant with the Commerce Clause. A statute will be held invalid on its face when it is clear that there is no way in which it could be constitutionally applied; such a showing has not yet been made with regard to this statute.
As the questions surrounding the constitutionality of Section 157-24(a) have been brought up in the context of a motion for summary judgment, the final question for this court to address is whether summary judgment is appropriate here. The standard of Fed.R.Civ.P. 56 is whether there is any genuine issue of material fact. This court finds that the standard is met in this case. The issue here is legal: may the Board constitutionally take into account the economic effect on the local dairy industry when it considers Safeway's application? The facts that are necessary to the determination of this legal question are already presented, and no further facts are needed. Cf. generally Schwarzer, Summary Judgment under the Federal Rules, 99 F.R.D. 465, 468 (1984) (summary judgment is generally available to decide purely legal issues).
The Ninth Circuit has stated in dicta that "[s]ummary disposition is generally inapposite for constitutional questions." Mabey v. Reagan, 537 F.2d 1036, 1051 (9th Cir. 1976). This court does not believe that this is a hard-and-fast rule prohibiting summary judgment in constitutional cases. The statement must be taken in context. The Mabey case involved a first amendment question, and the Ninth Circuit reversed the district court's grant of summary judgment because a complex motivational analysis was necessary and had not been undertaken. No such slippery motivational analysis is needed here, and there is no indication that a constitutional issue that is as clear-cut and factually complete as the one presented in this case should not be decided via summary judgment. Safeway should therefore be granted summary judgment as to Count One of its complaint.
IT IS THEREFORE ORDERED that the defendants' Motion to Dismiss is hereby DENIED;
*787 IT IS FURTHER ORDERED that the plaintiff's Motion for Partial Summary Judgment as to Count One of its Complaint is hereby GRANTED.
NOTES
[1] The defendants make several related arguments. In addition to protesting the lack of finality, they also claim that Safeway has no standing to sue because it has suffered no injury and that the court should look with disfavor on Safeway's attempt to interfere with an ongoing state administrative process. Because all of these arguments center around an asserted lack of justiciability due to the absence of a final ruling, this court will deal with all of the arguments in the context of its discussion of whether lack of finality precludes prosecution of Safeway's suit.
[2] It should be noted that even if discriminatory purpose and effect were not found and the per se rule therefore not applied, Section 157-24(a) would be invalid under the Bruce Church balancing test as well. Its burden on interstate commerce far outweighs any legitimate benefit to the state. The burden on interstate commerce is as heavy as it could be: interstate commerce is prohibited. The legitimate benefit to the state is nonexistent, as there is no contention that mainland milk is not completely safe and wholesome. The only interest served is that of the dairy farmers, and their monetary interests are not a proper "health and welfare" concern of the state's.