**Charles L. BARBER, Plaintiff,**

v.

**AMERICAN SECURITY BANK, Defendant.**

**No. 86–1156.**

United States District Court, District of Columbia.

Feb. 18, 1987.

J. Lincoln Woodard, Washington, D.C., for plaintiff.

Susan S. Sauntry, Morgan, Lewis & Bockius, Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiff Charles Barber, a former building engineer for the American Security Bank, brings this action for employment discrimination under various theories. First, plaintiff claims that he was discriminatorily discharged because of his race, black, in violation of 42 U.S.C. § 1981 (1986).[1] Second, plaintiff alleges that the bank took various actions against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1986). These supposedly discriminatory actions were the discharge, an earlier suspension, a negative evaluation, and inadequate compensation. Defendant has moved for summary judgment on all of plaintiff's claims. For the reasons stated below, defendant's motion will be granted, and this case will be dismissed in its entirety.[2]

## I

Plaintiff was hired by the American Security Bank as an engineer trainee in July of 1976.[3] He eventually became a "building engineer," essentially a maintenance man. When plaintiff was first hired in 1976, the bank failed to place him on the "night shift differential payroll," but plaintiff's manager discovered the error in 1977; plaintiff then was credited with full backpay, as he admits.[4]

In September 1984, plaintiff, during work time and on bank premises, asked co-workers if they wanted to buy country hams. According to plaintiff's own admission, he eventually distributed at least fifteen hams to fellow workers although

1. Although plaintiff's complaint is framed solely in terms of racial discrimination, his opposition to defendant's motion for summary judgment relies heavily on allegations of sex discrimination; presumably, plaintiff received unusually harsh treatment not only because he was black but also because he was male. These allegations are irrelevant, and are only mentioned here in order to highlight the complete lack of merit in plaintiff's claims.

2. Plaintiff's pendent state claim for intentional infliction of emotional distress will be dismissed without prejudice, for lack of subject matter jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

3. In response to defendant's Rule 108(h) statement of material facts as to which there is no genuine issue, plaintiff has filed a statement of facts in issue consisting of two broad allegations that merely rephrase his basic complaint. This statement is totally insufficient to raise a factual issue. Pursuant to Local Rule 108(h), the Court will assume that the facts in defendant's statement are true. See Vines v. Hodges, 422 F.Supp. 1292, 1296 n. 2 (D.D.C.1976); Fox v. Washington, 396 F.Supp. 504, 505 n. 2 (D.D.C.1975).

4. Plaintiff did not receive night differential pay in 1978–1980 because such pay was only available to employees who began their workday after 4:00 p.m. During those years, plaintiff started work in the early afternoon. The bank changed this policy in 1981 and paid plaintiff the night shift bonus from then on. Plaintiff's mere statement that the extra pay "was on the [pay] stub, ... but come to find out, I was not receiving that money" (Barber Transcript at 20), typifies the lack of merit in all of his claims.

plaintiff first insisted to his supervisors that he sold hams "to only six people." Plaintiff's actions violated the bank's rules on solicitation. On October 1, 1984, the bank suspended plaintiff for two weeks without pay. Plaintiff has admitted that no other employees working under his supervisor, Mr. Olson, solicited on company time.

On October 4, 1984, plaintiff filed a charge of racial discrimination with the Equal Employment Opportunity Commission. On May 10, 1985, plaintiff received an evaluation in which he was graded unsatisfactory in virtually every job category. The evaluation, by Facilities Engineering Manager Hyong Song, reported that plaintiff did "poor quality work that does not meet the [bank's] standards."[5] According to Song, he was not aware at the time that plaintiff had filed a complaint with the Equal Employment Opportunity Commission (a complaint that was still unresolved). Plaintiff does not contradict Song's assertion on this point. Song also stated in an affidavit that plaintiff "abruptly got up and announced that he had to leave" the May 10 evaluation meeting, explaining only that he had a personal problem.[6] Four days later, plaintiff left Song a message that he would not be at work, without explaining why. The next day, plaintiff told Song by phone that he would not be in again; when asked for an explanation, plaintiff became loud and abusive and hung up. Plaintiff does not contradict these assertions either.

Plaintiff was fired on May 16, 1985, because of insubordination, excessive absenteeism,[7] and falsification of bank records.[8] Four days later, plaintiff filed a second complaint with the Equal Employment Opportunity Commission, alleging that the bank had retaliated against him. On January 17, 1986, the Equal Employment Opportunity Commission determined that there was no reasonable cause to believe that plaintiff had been discriminated against because of his race.[9] Meanwhile, on July 12, 1985, plaintiff had filed for unemployment compensation from the District of Columbia. An appeals examiner found that plaintiff was discharged for cause—insubordination and dishonesty. This decision was affirmed by the Office of Unemployment Compensation's Office of Appeals and Review on February 13, 1986. Plaintiff filed this lawsuit on April 25, 1986, seeking $5 million in damages.

## II

Defendant first argues that plaintiff's claims under section 1981 are barred by collateral estoppel. Plaintiff has failed to answer this argument, which needs only a brief discussion to show that defendant is correct. In fact, the same analysis bars plaintiff's claim of improper discharge under Title VII.

The doctrine of collateral estoppel precludes litigation of issues that have been actually and necessarily determined in a prior adjudication, where preclusion will not be fundamentally unfair to the defendant. *See, e.g., Jack Faucett Associates v. American Tel. & Tel.*, 744 F.2d 118, 125 (D.C.Cir.1984). In section 1981 cases, "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts." *University of Tennessee v. Elliott*, — U.S. —, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986). Since District of Columbia courts would accord preclusive

---

5. Song Affidavit, Unspecified Attachment to Defendant's Motion for Summary Judgment.

6. Plaintiff's work logs for May 10, 1985, showed that he had worked continuously from 8:00 a.m. to noon, when he in fact had admitted leaving the bank at 11:30 a.m.—and Song had been informed that plaintiff left the building at 9:30 a.m., after their meeting.

7. During the first five months of 1985, plaintiff was absent from work sixteen times.

8. *See supra* note 6.

9. The Equal Employment Opportunity Commission apparently did not make a determination on the retaliation claims.

effect to the decision of the Office of Appeals and Review, this Court will also, as long as: (1) the office acted in a judicial capacity; and (2) the parties had an adequate opportunity to litigate the issues. *See City Wide Learning Center, Inc. v. William C. Smith & Co.*, 488 A.2d 1310 (D.C.App.1985).

■ First. There can be no dispute that the Office of Appeals and Review acted in a judicial capacity, since its enabling statute authorizes it "to hold hearings ... at which all parties shall be given opportunity to present evidence and to be heard." D.C. Code Ann. § 46–112(c) (1981). Second. At the hearing, plaintiff was represented by counsel, testified about the bank's motivation, called and cross-examined witnesses. Consequently, plaintiff had adequate opportunity to litigate the issues, and this Court will be bound by the finding that the plaintiff was discharged for cause.[10]

Given that finding, plaintiff's claims of unlawful discharge under both section 1981 and Title VII will fail unless he can demonstrate that this ostensible "cause" for firing was actually a pretext for discrimination or retaliation. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). In order to avoid summary judgment on the discharge claims, plaintiff must set forth specific facts showing that there is a genuine issue for trial.

Plaintiff has failed entirely to do this. He has not brought forth one specific fact that he was treated differently from similarly situated white employees. For example, plaintiff mentions that a white male employee named Ledesmo S. Canda was not discharged after twenty-seven absences in ten months. Eleven of Mr. Canda's days off were vacation without pay; another five were vacation with pay; and five resulted in a death in the family. More importantly, there is no indication whatever

that Mr. Canda failed to explain his absences, walked out on or lied to supervisors, solicited extensively during work time, etc. In short, nothing in this record provides genuine evidence that any of the few whites mentioned by plaintiff were similarly situated but treated differently. Plaintiff also has done no more than reiterate, in the most conclusory way, that the timing of his discharge smacks of retaliation. On the basis of these notions and accompanying affidavits and exhibits, however, the timing of his discharge smacks only of the proper discharge of an unsatisfactory and insubordinate employee. Plaintiff has failed as a matter of law to carry his burden of proof on the discharge claims under both Title VII and section 1981.

### III

Plaintiff's remaining three claims under Title VII can be dealt with briefly. First, plaintiff challenges as discriminatory his 1984 suspension for selling country hams at work. But plaintiff has offered no evidence suggesting that the bank was doing anything but carrying out (perhaps harshly) a strict policy against solicitations. The best he can do is argue that a white employee was merely given a final warning after violating the solicitation policy, rather than a suspension. (In fact, this employee was terminated after her next violation.) Plaintiff does not say whether this employee misrepresented the extent of the violation, as he did. This sole allegation is hardly enough to overcome defendant's business justification for the suspension, or to suggest that its justification was a pretext for race discrimination.[11]

Second, plaintiff contends that he was given an unsatisfactory evaluation on May 10, 1985 in retaliation for his EEO complaint. Plaintiff has not, however, disputed that the supervisor did not know about the EEO complaint, which was still unresolved.

---

**10.** Even if it were to reexamine the facts, the Court would have no choice but to arrive at the same conclusion.

**11.** Plaintiff also points out that a group of female employees, during *non-work* time, had held a Tupperware party on bank premises.

The employees were all disciplined. Such factual allegations do not even provide feeble evidence of discrimination. In fact, plaintiff has admitted at a deposition that no employees working under the supervisors who disciplined him solicited on company time.

As a matter of law, there can obviously be no retaliation if the retaliator did not know about the protected activity. *See, e.g., Cox v. Consolidated Rail Corp.*, 38 FEP 455, 464 (D.D.C.1985).

Finally, plaintiff alleges that he was discriminated against in his pay. Plaintiff's meritless allegations about his failure to receive his "night shift differential" have already been discussed *supra*, at 776 and n. 4. He next complains that he was paid less than all other engineers. Since all of these engineers with the exception of one are black, such a claim of racial discrimination is weak at best; perhaps plaintiff's pay has something to do with job performance, in which case the differential only bolsters the bank's argument. As for the one engineer who is not black, the bank has clearly shown that this employee is better qualified and has greater responsibility. Higher pay for a job that entails greater qualifications or responsibilities obviously does not constitute discrimination. Plaintiff has failed completely in making out even a *prima facie* case of discriminatory compensation.

Plaintiff has not met his burden of proof, as a matter of law, on any claim of discrimination or retaliation. It is cases like this one—consisting of wholly meritless claims with demands for damages in the millions of dollars—which trivialize the important, indeed vital, civil rights laws enacted in the last twenty-five years and which cannot but lower the respect with which these laws are regarded in the community as a whole. Defendant is entitled to summary judgment, and this action will be dismissed in its entirety.